**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MATTHEW PEACH<br><br>     Plaintiff,<br><br>vs.<br><br>LEROY McMATH, individually;<br>POWER ENTERTAINMENT CO, INC;<br>POWER ARTIST MUSIC CO.;<br>POWER ARTIST RECORDS, INC;<br>TOMMY BOY ENTERTAINMENT,<br>LLC d/b/a TOMMY BOY<br>DISTRIBUTION and TOMMY BOY<br>ARTISTS, LLC<br><br>     Defendants. | CIVIL ACTION<br>FILE NO. |

**EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, MATTHEW PEACH, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65, Local Rule 65 and Local Rule 7.2(B), for an immediate order granting injunctive relief to prevent irreparable harm.

## I.    Introduction

Plaintiff is the judgment creditor of Defendants, Leroy McMath ("McMath"), POWER ENTERTAINMENT CO, INC ("PEC"), and POWER ARTIST MUSIC CO. ("PAM") (collectively, Judgment Debtors), from a judgment rendered in the Superior Court of DeKalb County Georgia ("Superior Court Action"). During the Superior Court Action, the Judgment Debtors and co-Defendants, Power Artist

Records, Inc. ("PAR"), Tommy Boy Entertainment, LLC d/b/a Tommy Boy Distribution ("TBE LLC"), & Tommy Boy Artists, LLC ("TBA LLC") entered into an ASSET PURCHASE AGREEMENT dated December 7, 2023.

This is a civil action seeking relief under the Georgia Uniform Voidable Transactions Act ("UVTA") codified at O.C.G.A. § 18-2-70 et seq., arising from a concealed December 7, 2023 transfer of McMath's sound recording copyrights, related catalog rights, and associated royalty collection rights to TBA LLC. Plaintiff seeks immediate preliminary injunctive relief preserving the transferred asset and identifiable royalty proceeds generated by that asset pending adjudication of Plaintiff's UVTA claims. Without such relief, Defendants may further transfer, encumber, offset, commingle, deplete, or otherwise dispose of the transferred asset and its proceeds, thereby frustrating Plaintiff's ability to collect on his judgment.

## II.   Necessity for Expedited Relief

Expedited relief is necessary because the transferred asset continues to generate ongoing royalty proceeds, and those proceeds remain subject to transfer, offset, commingling, depletion, or other disposition before the Court can adjudicate Plaintiff's UVTA claims in the ordinary course. TBE LLC previously represented that it was acting as a stakeholder, but later ceased providing royalty statements, refused to interplead the disputed proceeds unless forced to do so, and has continued to withhold the royalty proceeds after entry of judgment in Plaintiff's favor. The

Judgment Debtors have represented that they lack funds to satisfy the judgment, failed to respond to post-judgment discovery, and disclosed the Asset Purchase Agreement only after a state-court order threatening incarceration. Immediate preservation relief is therefore necessary to maintain the status quo and prevent the transferred asset and identifiable proceeds from being further placed beyond Plaintiff's and the Court's reach.

### III.    Factual Background

On December 6, 2018, Plaintiff agreed to pay $415,000.00 to become the assignee of the right to receive the music royalty income generated by a catalog of 1990s hip hop recordings owned and controlled by producer and record label owner Leroy McMath through his record label Power Entertainment Co., Inc. (hereinafter referred to in this Complaint as the "Royalty Stream"). (¶4-6 - Peach Decl.) This assignment granted Plaintiff the right to receive the Royalty Stream income while Defendant McMath retained the 'Masters,' including the control and ownership of the sound recording copyrights in the music catalog. Thus, after the 2018 transaction, neither Defendant McMath nor the Georgia Corporate Defendants retained the right to re-sell, reassign, encumber, transfer or otherwise interfere with Plaintiff's rights in and to the Royalty Stream previously sold to Plaintiff. (¶6 - Peach Decl.)

Following the December 6, 2018 transaction, Royalty Exchange, acting as payment administrator for Plaintiff, received the Royalty Stream income from

McMath's distributor, Tommy Boy Entertainment, LLC d/b/a Tommy Boy Distribution (hereinafter "TBE LLC"), and forwarded on to Plaintiff without incident for nearly three years.  (¶4-5 & 7 - Peach Decl.)  On or about October 26, 2021, McMath wrongfully issued a subsequent Letter of Direction to TBE LLC, causing the distributor to suddenly cease paying the Royalty Stream to Royalty Exchange (as the administrator for Plaintiff) and begin paying the Royalty Stream to McMath's company and co-Defendant, Power Artist Music Inc. ("PAM")  (¶8 - Peach Decl.)  On December 20, 2021, Leroy McMath, via co-Defendants, Power Entertainment, Co, Inc ("PEC") & Power Artist Music, Inc. ("PAM") entered into a fraudulent agreement with TBE LLC for a royalty pre-payment (commonly known also as a royalty loan or advance) of $100,000.00, whereby said loan was to be repaid from Plaintiff's Royalty Stream. (¶9 - Peach Decl.)

Prior to resorting to litigation, demands were made upon Defendants to cease diverting music royalty payments from Plaintiff's Royalty Stream.  (¶10-11 - Peach Decl. & ¶2-3 - Duffoo Decl.) On June 20, 2022, Plaintiff filed a lawsuit against Defendant, Leroy McMath, POWER ENTERTAINMENT CO, INC; and POWER ARTIST MUSIC CO. alleging the following claims: (1) breach of contract and on account; (2) conversion; (3) tortious interference with contractual business relations; (4) fraud; (5) punitive damages; (6) pre-judgment interest; (7) and attorney's fees under O.C.G.A §§ 13-1-11 and 13-6-11.  (¶12 - Peach Decl. & ¶4 - Duffoo Decl.).

After filing the Georgia Superior Court Action, Plaintiff's counsel communicated regularly with TBE LLC, which included TBE LLC providing Plaintiff with monthly accounting reports regarding the Royalty Stream income and repayment of the $100,000.00 loan. (¶5-8 - Duffoo Decl.)  After October 30, 2023, TBE LLC ceased providing monthly royalty statements. TBE LLC also did not release any royalties to Royalty Exchange or Plaintiff, even after receiving confirmation that the Georgia Superior Court Action was resolved in Plaintiff's favor in June 2025.  (¶9 - Duffoo Decl.)

On January 3, 2025, the Superior Court of DeKalb County, Georgia, entered summary judgment in favor of Plaintiff on the issue of liability as to all claims asserted by Plaintiff against all Judgment Debtors, and on all counterclaims asserted by Judgment Debtors. (¶22 - Peach Decl. & ¶20 - Duffoo Decl.).  On June 24, 2025, the Georgia Superior Court Action was reduced to judgment in Plaintiff's favor in the amount of $427,710.30.  (¶23 - Peach Decl. & ¶21 - Duffoo Decl.).

**Collusion Between All Defendants:**

On October 16, 2023, the Defendant McMath began conspiring with TBE LLC's CEO, Thomas Silverman about how to avoid paying Plaintiff's Royalty Stream income and specifically discussing the sale of the Masters (referring to Defendant McMath's retained control and ownership of sound recording copyrights in the music catalog) for less than its fair value.  (¶15 - Peach Decl. & ¶10 - Duffoo

Decl.).  On October 30, 2023, Leroy McMath and Thomas Silverman exchanged emails showing Defendants had full knowledge of Plaintiff's Georgia Superior Court Action. Emails with the subject "Power-masters" discuss other potential purchasers to the Masters and Thomas Silverman asked Leroy McMath, if he sold to the other potential buyers, would McMath "have to pay Peach the $100,000.00 you took as advance to get the suit dropped?". Defendant McMath responded: "My loyalty is with TB. Yes, they know about the deal, and royalty liabilities and the $100K". (¶16 - Peach Decl. & ¶11 - Duffoo Decl.).  Between November 9, 2023 and November 11, 2023, Defendant McMath and Tom Silverman on behalf of TBE LLC and/or TBA LLC colluded to hinder, delay, or defraud Plaintiff, who was then a present creditor of Judgment Debtors.  Defendant McMath requested Thomas Silverman's recommendation "as a friend".  Thomas Silverman responded: "I suggest selling to me and I sell to you with a new company". In response, Defendant McMath, responded as follows:

> "I ready to sell to you. We can do a small sale price, like $100k. Then you can sell back with a new company as you stated. The sooner the better... so that the agreement with Royalty Exchange terminates, and future payments can be redirected to new owners. I agree the accounting needs to be Kept current, and artist needs to be paid when due."

(¶17 - Peach Decl. & ¶12 - Duffoo Decl.).

**<u>The Wrongful Transfer:</u>**

On November 17, 2023, the Plaintiff filed a Motion for Summary Judgment on all his claims and Defendants' counterclaims in the Georgia Superior Court Action. (¶19 - Peach Decl. & ¶13 - Duffoo Decl.).  On December 7, 2023, twenty days after the filing of Plaintiff's Motion for Summary Judgment, Defendants secretly consummated a transaction transferring ownership of both (1) the "Masters," meaning control and ownership of sound recording copyrights in the music catalog, and (2) "all income ownership and collection rights of the Masters, regardless of when earned", meaning the Royalty Stream, to Tommy Boy Artists, LLC, a sister company of TBE LLC (hereinafter, "Tommy Boy Defendants"). (¶20 - Peach Decl. & ¶14 - Duffoo Decl.).  In May 2024, David Parker, acting on behalf of TBE LLC, concealed from Plaintiff's counsel that TBA LLC, an affiliate of TBE LLC, was the purported "purchaser" of the music catalog that was the subject of the ongoing Georgia Superior Court Action. Instead, TBE LLC refused to provide additional monthly statements to Plaintiff, stating in an email on May 2, 2024, as follows:

> "Hi John,
>
> I now had the opportunity to discuss this matter with the principal of Tommy Boy.  As you know, the letters of direction are in no way binding on Tommy Boy.  I have pointed this out to you many times in the past.  Tommy Boy's providing statements was a courtesy I extended to you in anticipation of a quick resolution in the legal case involving Leroy McMath.  It is apparent that this case will drag on for some time and Tommy Boy will cease

providing information as a courtesy or otherwise. **As I have suggested to you in the past, if your client is willing to enter into a general release of all claims in favor of Tommy Boy we will provide whatever we have.**"

(¶16 - Duffoo Decl.).  David Parker of TBE LLC further stated on May 3, 2024:

John,

You have misunderstood my last email.  I am not asking you to consider a general release rather to provide Tommy Boy with an executed general release.  Without the signed release, Tommy Boy will follow industry standards in such disputes.  Those are providing a final non-appealable judgement in your favor or a full and final settlement of the outstanding litigation.

Please advise your client accordingly."

(¶16 - Duffoo Decl.).  On June 14, 2024, the undersigned spoke by telephone with David Parker of TBE LLC concerning the disputed royalty proceeds. During that conversation, the undersigned advised Mr. Parker that TBE LLC could not continue holding disputed royalty proceeds indefinitely and that the proper method is to file an interpleader action. Mr. Parker responded, in substance, that TBE LLC is not going to spend any money doing that unless forced. Mr. Parker further stated he does not understand why Plaintiff even wants the catalog because it is plagued with problems. Then Mr. Parker stated that he has said too much and abruptly ended the call.  (¶17 - Duffoo Decl.).

The foregoing communications are not intended to prove liability for the December 7, 2023 transfer, but to show TBE LLC's contemporaneous course of conduct - concealment of the purchasing entity's identity, conditioning cooperation on a release, and refusal to interplead disputed funds - bearing on irreparable harm and the risk of continued dissipation of the royalty proceeds.

After entry of the judgment against the Judgment Debtors, the undersigned counsel and Leroy McMath exchanged emails wherein Plaintiff discovered for the first time that the Judgment Debtors sold the music catalog to Tommy Boy (although the exact legal name of the purchasing Tommy Boy entity was still unknown).  On July 16, 2025, Leroy McMath stated:

> "John I wanted to reach out to you to respond to this email. The $75K you are making reference to was money held my TB, owed from years back. That wasn't been releasing until this case was over. They paid me monies for my medical bills using my masters as collateral, now they own the masters, and any future funds, will come from them."

(¶22 - Duffoo Decl.).  Further declaring his inability to pay the $427,710.30 final judgment and intention to declare himself bankrupt, stating as follows:

> "I suggest you contact TB directly. At the moment I don't have any money, I'm working with the attorney on my bankruptcy filing." (¶23 Duffoo Decl.).

McMath further asserts that the December 7, 2023, transaction was not an arms-length transaction conducted at a fair market price as follows:

☐

> "I have no problem with you getting your monies or money owed to me from TB. I feel like my masters and money was taken any way." (¶24 - Duffoo Decl.).

Subsequent to entry of the judgment in the Georgia Superior Court Action, Plaintiff commenced post judgment discovery upon the Judgment Debtors. (¶25 - Duffoo Decl.). The Judgment Debtors failed to respond to any of Plaintiff's post judgment discovery and as a result, Plaintiff commenced a post judgment action against the Judgment Debtors on August 29, 2025, being Civil Action No. 25CV8093 filed in the Superior Court of DeKalb County, State of Georgia. (¶26 - Duffoo Decl.). On January 27, 2026, a Motion to Hold the Judgment Debtors in Contempt & to Incarcerate Leroy McMath, came for hearing and the Superior Court entered an Order finding as follows:

> After hearing evidence and argument, the Court finds that McMath has no acceptable reason for failing to respond to Plaintiff's post-judgment discovery requests and no acceptable reason for failing to comply with the Court's Order Compelling Defendants/Judgment Debtors to Respond to Post Judgment Discovery, entered on September 15, 2025. His failure has been willful.

(¶27 - Duffoo Decl.).

The Court gave Mr. McMath until February 3, 2026, to respond and further held: "If McMath has failed to provide all discovery responses by the compliance hearing, he shall be incarcerated." (¶28 - Duffoo Decl.). On January 28, 2026, following the Court's Order, the McMath Defendants began producing documents

in response to Plaintiff's post judgment discovery, which finally included a copy of a document identified as "ASSET PURCHASE AGREEMENT".  (¶29 - Duffoo Decl.).  The Asset Purchase Agreement dated December 7, 2023 is entered into between, Defendant Tommy Boy Artists, LLC ("Buyer"), on the one hand, and Power Artists Records, Inc., doing business as Power Production, Inc., Power Records, Triad Records, Inc., Power Entertainment, Inc., Wrap Records, and any other affiliated entities, and Leroy McMath, in his individual capacity (jointly and severally referred as the "Seller"), on the other hand.  (¶24 - Peach Decl. & ¶30 - Duffoo Decl.).    The Asset Purchase Agreement states a purchase price of $115,000.00, which was not reasonably equivalent to the value of the income-producing music catalog and related rights transferred therein.   (¶28 - Peach Decl. & ¶32 - Duffoo Decl.).  The McMath Defendants and TBA LLC further agreed that a subsequent payment would be made to Seller in the amount of "($75,000) (the "Contingent Payment") will be made to Seller on the date that is eighteen (18) months following the Closing Date; provided, however, the Contingent Payment a) shall not be due or payable in the event a lawsuit is filed in any jurisdiction which names Buyer or any of its affiliates whether or not as a result of or in connection with the matters contained in the lawsuit referred to in paragraph 18.2" of the Asset Purchase Agreement.  (¶30 - Peach Decl. & ¶33 - Duffoo Decl.).  Paragraph 18.2 of the Asset Purchase Agreement states:

"Leroy McMath is a party to a civil action filed by Mathew Peach on June 20, 2022, in the Superior Court, Gwinnet County, Georgia, civil case number 22-A-05274-3. Notwithstanding anything to the contrary contained herein, Seller shall hold harmless and indemnify Buyer for all costs and expenses including attorney fees and court costs that Buyer may incur or may arise as a result of this action or enforcement of any judgment or settlement."

All parties to the concealed December 7, 2023, transaction had full knowledge of Mr. Peach's pending Georgia Superior Court Action before consummating the transaction. (¶31 - Peach Decl. & ¶34 - Duffoo Decl.). The Asset Purchase Agreement is signed on behalf of Tommy Boy Artists, LLC, by Thomas Silverman, its CEO. (¶32 - Peach Decl. & ¶35 - Duffoo Decl.). Through January 31, 2026, the McMath Defendants produced emails and the Asset Purchase Agreement to Plaintiff's undersigned attorney via Dropbox, demonstrating collusive actions to hinder, delay, or defraud Plaintiff as a present creditor. McMath included a message as follows: "Sorry it to so long. This was a lot. Tom [Silverman], ask me to delete these emails. For some reason I did not.  I will take a break and start sending scans." (¶33 - Peach Decl. & ¶36 - Duffoo Decl.).

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard

A party seeking a temporary restraining order or preliminary injunction must establish: "(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant

outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." United Parcel Serv., Inc. v. Mercado, 799 F. Supp. 3d 1281, 1289 (N.D. Ga. 2025)  The decision as to whether a plaintiff carried this burden "is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." Id. at 1289.

Georgia's UVTA expressly authorizes the injunctive relief Plaintiff seeks here. Subject to applicable principles of equity and applicable rules of civil procedure, O.C.G.A. § 18-2-77(a)(3)(A) permits a creditor to obtain "[a]n injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." The Georgia Supreme Court has recognized that fraudulent-transfer cases are particularly suited to interlocutory injunctive relief and has affirmed an interlocutory injunction preserving the status quo pending adjudication of fraudulent-transfer claims. See SRB Inv. Servs., LLLP v. Branch Banking & Tr. Co., 289 Ga. 1, 9, 709 S.E.2d 267, 274 (2011).

1. **Plaintiff has a Substantial Likelihood of Success on the Merits of His Uniform Voidable Transactions Act (UVTA) Claim.**

Under Georgia's Uniform Voidable Transactions Act (UVTA), transfers of a debtor's assets are avoidable by a creditor if the transfer was actually or constructively fraudulent. O.C.G.A. § 18-2-74 – 75." Soluciones En Bastones S.A.

de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025 WL 4093239, at *5 (N.D. Ga. Dec. 9, 2025)

### a. Actual Fraud Exists.

First, to establish liability for avoidance of an actually fraudulent transfer, a creditor must show that the debtor had "actual intent to hinder, delay, or defraud any creditor of the debtor." O.C.G.A. § 18-2-74 Soluciones En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025 WL 4093239, at *5 (N.D. Ga. Dec. 9, 2025) (citing, Agricommodities, Inc. v. Moore, 359 Ga. App. 1, 3 (2021). "Because actual intent can be difficult to prove, the UVTA contains a list of factors ("badges of fraud") which can serve as evidence giving rise to an inference of fraudulent intent." Soluciones En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025 WL 4093239, at *5 (N.D. Ga. Dec. 9, 2025) (citing, Ga. Com. Stores, Inc. v. Forsman, 342 Ga. App. 542, 552 (2017))

Here, on December 6, 2018, Plaintiff became the assignee to Royalty Stream income generated by a catalog of 1990s hip hop recordings previously owned and controlled by Defendants Leroy McMath, POWER ENTERTAINMENT CO, INC; and POWER ARTIST MUSIC CO. (¶4-6 - Peach Decl.). On or about October 26, 2021, Defendant Leroy McMath caused the Royalty Stream income to be diverted to one of his companies and Co-Defendant, Power Artist Music Inc. and entered into

a fraudulent agreement with Tommy Boy Distribution for a royalty pre-payment of $100,000.00 to be repaid from the Royalty Stream.  (¶8-9 - Peach Decl.).

As a result, on June 20, 2022, Plaintiff filed a Georgia Superior Court Action against Defendants, Leroy McMath, POWER ENTERTAINMENT CO, INC; and POWER ARTIST MUSIC CO. alleging the following claims: (1) breach of contract and on account; (2) conversion; (3) tortious interference with contractual business relations; (4) fraud; (5) punitive damages; (6) pre-judgment interest; (7) and attorney's fees under O.C.G.A §§ 13-1-11 and 13-6-11.  (¶12 - Peach Decl. & ¶4 - Duffoo Decl.).  On January 3, 2025, the Superior Court of DeKalb County, Georgia, entered summary judgment in favor of Plaintiff on the issue of liability as to all claims asserted by Plaintiff against all Judgment Debtors, and on all counterclaims asserted by Judgment Debtors. (¶22 - Peach Decl. & ¶20 - Duffoo Decl.).  On June 24, 2025, the Georgia Superior Court Action was reduced to judgment in Plaintiff's favor in the amount of $427,710.30.  (¶23 - Peach Decl. & ¶21 - Duffoo Decl.).

During the Georgia Superior Court Action, the Defendant McMath began conspiring with TBE LLC's CEO, Thomas Silverman about how to avoid paying Plaintiff's Royalty Stream income and specifically discussing the sale of the Masters (referring to Defendant McMath's retained control and ownership of sound recording copyrights in the music catalog) for less than its fair value.  (¶15 - Peach Decl. & ¶10 - Duffoo Decl.).  Between October 16, 2023 through November 17,

2023, Defendant McMath and TBE LLC's CEO, Thomas Silverman, exchanged emails one of which reads as follows:

> "I ready to sell to you. We can do a small sale price, like $100k. Then you can sell back with a new company as you stated. The sooner the better... so that the agreement with Royalty Exchange terminates, and future payments can be redirected to new owners. I agree the accounting needs to be Kept current, and artist needs to be paid when due."

(¶16 - Peach Decl. & ¶12 - Duffoo Decl.). On December 7, 2023, while the Georgia Superior Court Action was pending, the co-Defendants Power Artists Records, Inc and Tommy Boy Artists, LLC, via TBE LLC entered into an Asset Purchase Agreement. (¶20-21 & 24- Peach Decl. & & ¶14-15 - Duffoo Decl.). While TBE LLC is not named as the transferee under the Asset Purchase Agreement, TBE LLC's continuing control over the royalty proceeds independently supports injunctive relief against it. Because TBE LLC has acted as the collection and distribution point for royalties generated by the transferred asset, it holds property in which Plaintiff has an equitable interest by virtue of the fraudulent transfer, and a court of equity may restrain a non-transferee who holds or controls the fruits of a fraudulent transfer to prevent their dissipation pending judgment. See O.C.G.A. § 18-2-77(a)(3)(C) (authorizing "[a]ny other relief the circumstances may require"). Plaintiff does not allege that TBE LLC is itself a fraudulent transferee, and the relief sought against TBE LLC is accordingly narrower than the relief sought against the McMath Defendants and TBA LLC: an order restraining further transfer, dissipation,

or diversion of identifiable royalty proceeds already in, or coming into, TBE LLC's possession or control.

The Asset Purchase Agreement transferred the Masters and related catalog rights stripping the Judgment Debtors of a significant music asset and thereby hindered, delayed and defrauded Plaintiff by placing that asset beyond reach of recovery on Plaintiff's monetary judgment. (¶25- Peach Decl.). The email communications and conduct of the Defendants demonstrate actual intent to hinder, delay, or defraud Plaintiff and give rise to several factors recognized as badges of fraud under O.C.G.A. § 18-2-74(b), including but not limited to: The transfer was concealed; before the transfer was made the debtor had been sued; the transfer was of substantially all the debtor's assets; and the transfer occurred shortly after the Judgment Debtors incurred a substantial debt. (¶23 & 37 - Duffoo Decl.). This last badge is illustrated by the Asset Purchase Agreement's Contingent Payment provision, which by its own terms relieves Buyer of any obligation to pay the $75,000 Contingent Payment if a lawsuit is filed against Buyer or its affiliates - a provision expressly designed to shield the Tommy Boy Defendants from, and defeat recovery arising out of, the very litigation the transfer was engineered to outrun. (¶30-31 & 33 - Peach Decl.).

### b.  Constructive Fraud Exists.

Notwithstanding the actual fraud, the evidence strongly supports liability

against Defendants for constructive fraudulent transfer avoidance. "Under Georgia's UVTA, a transfer is avoidable as constructively fraudulent when 1) the transfer was not for reasonably equivalent value, and 2) the debtor was or became insolvent as a result of the transaction." Soluciones En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025 WL 4093239, at *6 (N.D. Ga. Dec. 9, 2025) (citing, Windward Campus Owner, LLC v. Good Night Med. of Ohio, LLC, 363 Ga. App. 177, 181 (2022).

Reasonably equivalent value is determined through a three-part test: "1) whether the debtor received value; 2) whether the value received was in exchange for the property transferred; and 3) whether the value was reasonably equivalent to the value of the property transferred." Soluciones En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025 WL 4093239, at *6 (N.D. Ga. Dec. 9, 2025) (citing, In re S. Home & Ranch Supply, Inc., 515 B.R. 699, 707 (Bankr. N.D. Ga. 2014)).

Here, the Judgment Debtors received value, being demonstrated by the Asset Purchase Agreement that discloses a purchase price of $115,000.00 for the income-producing music catalog and related rights transferred therein. (¶28- Peach Decl.). The Asset Purchase Agreement and aforementioned communications between Defendants demonstrates that the value received was in exchange for the property transferred. Lastly, the value was not reasonably equivalent to the value of the

property transferred as demonstrated from the words of Defendant Leroy McMath, which provides as follows:

On July 16, 2025, an email from Leroy McMath stated:

"John I wanted to reach out to you to respond to this email. The $75K you are making reference to was money held my TB, owed from years back. That wasn't been releasing until this case was over. They paid me monies for my medical bills using my masters as collateral, now they own the masters, and any future funds, will come from them."

(¶22 - Duffoo Decl.).  In the same email chain, McMath further asserts that the December 7, 2023, transaction was not an arms-length transaction conducted at a fair market price: "I have no problem with you getting your monies or money owed to me from TB. I feel like my masters and money was taken any way." (¶24 - Duffoo Decl.).

The lack of reasonably equivalent value is further supported by the fact that Plaintiff paid $415,000 in 2018 for the Royalty Stream alone, while the December 7, 2023 Asset Purchase Agreement purported to transfer the Masters, related catalog rights, and Royalty Stream rights for only $115,000, plus a contingent $75,000 payment that was expressly tied to litigation involving Plaintiff and never executed.

Furthermore, the Judgment Debtors were or became insolvent as a result of the transaction.  In the aforementioned email, McMath stated his inability to pay the $427,710.30 final judgment and intention to declare himself bankrupt: "I suggest you contact TB directly. At the moment I don't have any money, I'm working with

the attorney on my bankruptcy filing." (¶23 - Duffoo Decl.).  The Judgment Debtors'

insolvency is further demonstrated by their responses to post judgment discovery in

the Superior Court Action. (¶37 - Duffoo Decl.).

### 2.  Plaintiff Will Suffer Irreparable Harm If relief Is Not Granted.

"An injury is 'irreparable' only if it cannot be undone through monetary

remedies." United Parcel Serv., Inc. v. Mercado, 799 F. Supp. 3d 1281, 1295 (N.D.

Ga. 2025). Preliminary injunctions serve to maintain the status quo until a final

decision on a matter can be reached.  United States v. DBB, Inc., 180 F.3d 1277,

1282 (11th Cir. 1999).   In this District, Judge Story found that "Plaintiff has

produced sufficient evidence to show that a preliminary injunction is necessary to

prevent it from suffering a total loss and continuing irreparable harm." Soluciones

En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025

WL 4093239, at *7 (N.D. Ga. Dec. 9, 2025)

Here, the Plaintiff has demonstrated that the Judgment Debtors have no assets

of significant value except for the asset that was transferred to TBA with the actual

intent to hinder, delay, or defraud Plaintiff's collection of the monetary judgment

issued in the Georgia Superior Court Action.  (¶22-24 & 37 - Duffoo Decl.).  The

communications between Leroy McMath and his longtime friend, Tom Silverman,

shows conclusively, that the intent of the Asset Purchase Agreement was to prevent

Plaintiff's recovery. (¶15-17 - Peach Decl. & ¶10-12 - Duffoo Decl.).   The

Defendants stalled disclosure of the Asset Purchase Agreement until a Court Order was entered threatening incarceration of co-Defendant, Leroy McMath.  (¶27-30 - Duffoo Decl.).

Here, the irreparable harm is not merely non-payment of money. Plaintiff seeks preservation of specific, identifiable proceeds generated by the transferred music asset. The evidence shows that TBE LLC previously represented that it was acting as a stakeholder, later ceased providing royalty statements, refused to interplead the disputed funds unless forced, and has continued to withhold royalty proceeds after entry of judgment in Plaintiff's favor.  (¶7, 9, 17 - Duffoo Decl.). Unless restrained, the Tommy Boy Defendants may transfer, offset, deplete, commingle, or apply those proceeds for their own benefit before this Court can adjudicate Plaintiff's UVTA claims.   Because the Judgment Debtors have represented that they lack funds, have failed to respond to post-judgment discovery, and have already transferred the primary income-producing asset at issue, a later money judgment may be rendered ineffective absent immediate preservation of the transferred asset and its proceeds.

Therefore, Plaintiff has produced sufficient evidence showing that a preliminary injunction is necessary to preserve the transferred asset and its proceeds and to prevent continuing irreparable harm pending adjudication of Plaintiff's UVTA claims.

### 3. Balance of Equities:

"[I]t is an accepted equitable principle that a court does not balance the equities in a case where the defendant's conduct has been willful." <u>BellSouth Telecommunications, Inc. v. Mintz</u>, 04-CV-3586-CC, 2005 WL 8155226, at *3 (N.D. Ga. Nov. 14, 2005)

The evidence demonstrates that Defendants are willfully engaging in fraudulent conduct with intent to hurt Plaintiff's recovery of its judgment against the asset(s) that were transferred. If injunctive relief is not granted, Plaintiff will continue to be irreparably harmed by Defendants' willful conduct.

By contrast, an injunction will not cause any hardship to Defendants, given that the preliminary injunction seeks to (1) Issue an injunction against the McMath Defendants prohibiting further disposition of the asset transferred or of any other property; (2) Issue an injunction against Defendant Tommy Boy Artists, LLC, prohibiting any further sale, transfer, assignment, encumbrance, or other disposition of the December 7, 2023, transferred asset and any proceeds thereof, including ongoing monthly royalty proceeds generated by the asset, and (3) Issue an injunction against Defendant Tommy Boy Entertainment, LLC – as an affiliated entity of Tommy Boy Artists, LLC and the last known entity responsible for collecting and distributing Plaintiff's Royalty Stream income - prohibiting any further transfer, dissipation, diversion, offset, conversion, or other disposition of the ongoing

monthly royalty proceeds generated in connection with the December 7, 2023 transferred asset.

### 4. Public Interest:

"[T]he public has an interest in limiting and disincentivizing fraud and allowing the victims restitution." <u>Soluciones En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC</u>, 2:22-CV-248-RWS, 2025 WL 4093239, at *7 (N.D. Ga. Dec. 9, 2025) Granting the injunctive relief sought by this Motion is in the public interest. Despite a judgment against the Georgia Judgment Debtors, they have profited from their wrongdoing by acquiring money allegedly to pay for McMath's medical bills.  The Tommy Boy Defendants have directly profited from the sale of the Music Catalog and done so by conspiring with the McMath Defendants to interfere with Plaintiff's contractual rights and recovery of its judgment. Defendants' conduct directly challenges the public's interest. The public interest does not support allowing a judgment debtor to transfer assets in order to avoid judgments based on their and the transferee's fraudulent behavior; therefore, entry of a preliminary injunction serves the public interest.

### 5. Waiver of Security/Bond is Appropriate:

Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have

been wrongfully enjoined or restrained." But "it is well-established that 'the amount of security required by the rule is a matter within the discretion of the trial court, and the court may elect to require no security at all.' " United Parcel Serv., Inc. v. Mercado, 799 F. Supp. 3d 1281, 1296 (N.D. Ga. 2025) (citing, *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) "Where the balance of [equities of potential hardships] weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement." Soluciones En Bastones S.A. de C.V. v. Studebaker Def. Grp., LLC, 2:22-CV-248-RWS, 2025 WL 4093239, at *7 (N.D. Ga. Dec. 9, 2025)(citing, Elliott v. Kiesewetter, 98 F.3d 47, 60 (3d Cir. 1996)

Here, given the evidence showing Defendants' likelihood of liability and the limited preservation relief requested, Plaintiff respectfully requests that no bond be required. Alternatively, Plaintiff requests that the Court require only a nominal bond because the requested injunction merely preserves identifiable disputed proceeds and does not transfer ownership, halt exploitation of the music catalog, or impose substantial monetary harm on Defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion and enter an immediate preliminary injunction: (1) against the McMath Defendants

prohibiting further disposition of the asset transferred or of any other property; (2) Issue an injunction against Defendant Tommy Boy Artists, LLC, prohibiting any further sale, transfer, assignment, encumbrance, or other disposition of the December 7, 2023, transferred asset and any proceeds thereof, including ongoing monthly royalty proceeds generated by the asset; (3) Issue an injunction against Defendant Tommy Boy Entertainment, LLC – as an affiliated entity of Tommy Boy Artists, LLC and the last known entity responsible for collecting and distributing Plaintiff's Royalty Stream income - prohibiting any further transfer, dissipation, diversion, offset, withholding, conversion, or other disposition of the ongoing monthly royalty proceeds generated in connection with the December 7, 2023 transferred asset; (4) Set a prompt hearing for a Preliminary Injunction; and (5) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

This July 13, 2026.

s/John M. Duffoo, Esq.
GA Attorney Bar No. 231973
Attorney for Plaintiff
Business Law Firm of John M. Duffoo
P.O. Box 767355
Roswell, GA 30076
Telephone: (770) 312-6160
Email: John@jdbusinesslaw.com

## <u>LOCAL RULE 5.1 CERTIFICATION</u>

Counsel certifies that the Emergency Motion was prepared in accordance with the type and font, 14-point Times New Roman, selections approved by Local Rule 5.1.

This July 13, 2026.


<u>s/John M. Duffoo, Esq.</u>
GA Attorney Bar No. 231973
Attorney for Plaintiff
Business Law Firm of John M. Duffoo
P.O. Box 767355
Roswell, GA 30076
Telephone: (770) 312-6160
Email: John@jdbusinesslaw.com